# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY GIBSON,<br><br>    Plaintiff,<br><br>    v.<br><br>HAGERTY INSURANCE AGENCY, et al.,<br><br>    Defendants.<br>_____/<br>HAGERTY INSURANCE AGENCY, LLC, et al.,<br><br>    Defendants/Counter-Claimants,<br><br>    v.<br><br>RAY GIBSON, JUDY SLACK and ROES 1 through 10,<br><br>    Counter-Defendants.<br>_____/ | Case No. 1:16-cv-00677-BAM<br><br>ORDER GRANTING IN PART HAGERTY INSURANCE AGENCY'S AND ESSENTIA INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 59, 82) |

Currently pending before the Court is a motion for summary judgment filed by Counter-Claimants Hagerty Insurance Agency ("Hagerty") and Essentia Insurance Company ("Essentia") (collectively "Counter-Claimants") on November 20, 2017. (Doc. No. 59.) The motion was re-noticed for hearing before this Court on October 26, 2018. (Doc. No. 82.) Counter-Defendants Ray Gibson and Judy Slack did not file a timely written opposition or other response to Counter-Claimants' motion for summary judgment. Due to the failure to oppose the motion, Counter-Defendants Ray Gibson and Judy Slack were not entitled to be heard at oral argument in

1

opposition to the motion.  Local Rule 230(c).  The Court therefore vacated the hearing set for October 26, 2018, and the matter was deemed submitted.  Local Rule 230(c), (g).

Having considered the unopposed moving papers and the record in this action, Counter-Claimants' motion for summary judgment is GRANTED in part and DENIED in part as explained below in detail.

## I. Procedural Background

This is an insurance coverage dispute arising out of a claim by Ray Gibson of an alleged theft of a 1909 Winchester motorcycle and a 1913 Harley Davidson from his home in Turlock, California.  On April 7, 2016, Mr. Gibson initiated an action against Hagerty and Essentia in Stanislaus County Superior Court, asserting first-party breach of insurance contract and breach of the implied covenant of good faith and fair dealing.  (Doc. No. 1 and Exhibit A.)

Hagerty and Essentia filed counterclaims for declaratory relief on May 11, 2016, against Mr. Gibson and his wife Judy Slack.  The counterclaims are as follows:  (1) declaratory relief – policy void *ab initio* for misrepresentation and concealments made in connection with application for insurance; (2) declaratory relief--policy void *ab initio* for lack of insurable interest; (3) declaratory relief – policy void based on misrepresentations in the presentation of the claim; (4) declaratory relief – no duty to indemnify; and (5) declaratory relief – no duty to indemnify.  (*Id.* and Ex. G.)  Concurrent with the filing of their counterclaims, Hagerty and Essentia also removed the action to this Court.  (*Id.*)

On November 20, 2017, Hagerty and Essentia filed the instant motion for summary judgment. (Doc. No. 59.)  Due to issues related to the withdrawal of counsel for Mr. Gibson and Ms. Slack, the action was stayed from March 19, 2018, through May 19, 2018.  (Doc. Nos. 68, 70.)  Thereafter, on June 29, 2018, Mr. Gibson's underlying action against Hagerty and Essentia was dismissed without prejudice based on his failure to obey court orders and his failure to prosecute this action.  (Doc. No. 77.)  On August 27, 2018, this Court *sua sponte* directed entry of final judgment on Mr. Gibson's claims pursuant to Federal Rule of Civil Procedure 54(b), and judgment was entered against Mr. Gibson on September 7, 2018.   (Doc. Nos. 81, 83.)  Following entry of judgment on Mr. Gibson's claims, the only remaining claims in this action are Hagerty

2

and Essentia's counterclaims for declaratory relief against Mr. Gibson and Ms. Slack.[1]

On September 6, 2018, Hagerty and Essentia re-noticed the instant motion for summary judgment on their counterclaims for declaratory relief. (Doc. No. 82.)

On September 20, 2018, the Court advised Mr. Gibson and Ms. Slack that any opposition to the motion for summary judgment was due no later than October 12, 2018. (Doc. No. 85.) Despite the Court's notice, Mr. Gibson and Ms. Slack did not file an opposition to the motion for summary judgment. As noted above, the Court thus vacated the hearing and the matter is deemed submitted. (Doc. No. 86.)

## II. Undisputed Material Facts ("UMF")[2]

On May 14, 2015, Mr. Gibson signed a Collector Vehicle Insurance Application ("Application") requesting coverage for two classic vehicles. Mr. Gibson identified the vehicles as (1) a 1909 Winchester 6908 Motorcycle valued at $500,000, and (2) a 1913 Harley-Davidson 270C Motorcycle valued at $200,000 and indicated that these vehicles were located at 36 S. Daubenberger Road in Turlock, California. UMF 2.

Essentia, and its third-party claim administrator, Hagerty, issued Classic Automobile Policy number 2P15074-00 effective May 15, 2015 to May 15, 2016 to Mr. Gibson extending coverage for a 1909 Winchester 6908 Motorcycle with a Guaranteed Value of $500,000 and a 1913 Harley-Davidson 270C Motorcycle with a Guaranteed Value of $200,000 (the "Policy"). UMF 1.

The Policy voids any coverage for **Concealment or Fraud** as follows: All coverage will be void if you intentionally conceal or misrepresent any material fact relating to this insurance before or after a loss. UMF 3. The Policy provides under PART E, "**Duties After An Accident or Loss**" as follows:

> We have no duty to provide coverage under this policy unless
> there has been full compliance with the following duties:

---

[1] As this action is now limited to Hagerty and Essentia's counterclaims for declaratory relief, their motion for summary judgment on Mr. Gibson's claims for breach of contract and breach of the implied covenant of good faith and fair dealing is no longer necessary and is DENIED AS MOOT. This denial is limited to Mr. Gibson's claims in the underlying action.

[2] These facts are derived from Hagerty and Essentia's "Statement of Undisputed Facts in Support of Motion for Summary Judgment." (Doc. No. 59-2.) Because no opposition was filed, these facts are undisputed.

…

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit;

…

3. Submit, as often as we reasonably require:

…

    b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

    a. Medical reports; and
    b. Other pertinent records.

5. Submit written proof of loss when required by us.

UMF 4.

On September 24, 2015, Mr. Gibson alleged there was a theft of a 1909 Winchester 6908 motorcycle and a 1913 Harley-Davidson 270C motorcycle at his residence located at 36 S. Daubenberger Road in Turlock, California (the "Claim"). UMF 5. During the investigation of Mr. Gibson's claim, Hagerty and Essentia took the recorded statement of Mr. Gibson on October 26, 2015, and an examination under oath of Mr. Gibson on December 3, 2015 and February 1, 2016. There were multiple misrepresentations and inconsistencies identified between the statements and testimony provided by Mr. Gibson concerning the authenticity of the property allegedly stolen, Mr. Gibson's ownership of the property, and even the claimed value of the allegedly stolen property. UMF 6.

On December 7, 2015, December 11, 2015, December 16, 2015, December 17, 2015, January 8, 2016 and January 22, 2016, Hagerty and Essentia requested that Mr. Gibson provide the "purchase/sale agreement for the 1909 Winchester" and for "documents which evidence or reflect the approximately $500,000 payment to the seller for the purchase of the 1909 Winchester" to support Mr. Gibson's claim. UMF 7. Mr. Gibson failed to produce numerous documents or requested items to support his claim, including, but not limited to, credit card statements, invoices, receipts, bank statements, documents supporting Mr. Gibson's income,

purchase contracts, owner's manuals, warranty information, or any other similar documents that could verify Mr. Gibson's purchase and/or ownership of any one of the allegedly stolen items. UMF 8.

On July 25, 2016, when the Claim was denied by Essentia, the myriad reasons were fully disclosed to Mr. Gibson. UMF 9. Essentia denied the Claim to pay for the alleged theft once it discovered myriad misrepresentations concerning the authenticity of the property allegedly stolen, Mr. Gibson's ownership of the property, and even the claimed value of the allegedly stolen property. UMF 10.

On December 12, 2014, Mr. Gibson told the California Department of Motor Vehicles under penalty of perjury that he purchased the motorcycle for $600. UMF 15. On December 12, 2014, Mr. Gibson told the California Department of Motor Vehicles under penalty of perjury that he purchased the 1909 Winchester on November 30, 2000. UMF 16.

In November 2013, Mr. Gibson sold the 1909 Winchester to Mr. Jerry Morrison and gave Mr. Morrison title and possession of the 1909 Winchester. UMF 17. On June 3, 2015, Mr. Gibson forcibly retook possession of the 1909 Winchester from Mr. Morrison. UMF 18.

Mr. Gibson falsely reported that the 1909 Winchester and 1913 Harley-Davidson were stolen from his home. UMF 19.

On October 26, 2015, Mr. Gibson told Essentia in a recorded statement that he purchased the 1909 Winchester for $500,000. UMF 20. On December 3, 2015, Mr. Gibson testified in his examination under oath that he paid $500,000 in cash for the 1909 Winchester. UMF 21. Mr. Gibson admitted that he did not pay $500,000 for the 1909 Winchester. UMF 22. On February 1, 2016, Mr. Gibson admitted he paid $5,000 for the 1909 Winchester. UMF 23.

Plaintiff did not purchase the 1909 Winchester. UMF 12. Plaintiff did not produce any written purchase agreement evidencing purchase of the 1909 Winchester. UMF 13. Plaintiff built the 1909 Winchester with an engine he purchased from Mr. Fred Lange. UMF 14.

**III.    Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

///

### IV. Discussion

Hagerty and Essentia argue that they are entitled to summary judgment on their first four counterclaims for (1) declaratory relief – policy void *ab initio* for misrepresentation and concealments made in connection with application for insurance; (2) declaratory relief--policy void *ab initio* for lack of insurable interest; (3) declaratory relief – policy void based on misrepresentations in the presentation of the claim; and (4) declaratory relief – no duty to indemnify – based on Mr. Gibson's misrepresentations in his application regarding the value of the vehicles and that the vehicles would be stored at his residence. Additionally, Hagerty and Essentia argue that Mr. Gibson's misrepresentations during presentation of the Claim support their right to summary judgment. Hagerty and Essentia further argue that they are entitled to summary judgment on their fifth counterclaim for declaratory relief – no duty to indemnify – because Plaintiff failed to comply with his duties after an accident or loss to produce all documents substantiating his claims for damages from the alleged theft.

#### A. Requests for Admissions

As a preliminary matter, Hagerty and Essentia contend that Mr. Gibson has conclusively admitted all of their propounded requests for admission. Hagerty and Essentia served Mr. Gibson with Request for Admissions, Set One, on April 11, 2017. UMF 11. The Admissions asked, among other things, the following:

**REQUEST NO. 1:**
Admit that **YOU** have not produced the written purchase agreement or any other documents evidencing **YOUR** purchase of the **1909 Winchester**.

**REQUEST NO. 2:**
Admit that **YOU** did not purchase the **1909 Winchester**.

**REQUEST NO. 3:**
Admit that **YOU** built the **1909 Winchester**.

**REQUEST NO. 4:**
Admit that **YOU** purchased a new engine for the **1909 Winchester** from Fred Lange.
…

**REQUEST NO. 6:**
Admit that on December 14, 2012 **YOU** stated to the California Department of Motor Vehicles under penalty of perjury that **YOU** pad $600 for the **1909 Winchester**.

7

**REQUEST NO. 7:**
Admit that on December 14, 2012 **YOU** stated to the California Department of Motor Vehicles under penalty of perjury that **YOU** purchased the **1909 Winchester** on November 30, 2000.
…

**REQUEST NO. 10:**
Admit that on September 17, 2013 **YOU** signed over the California title of the **1909 Winchester** to Mr. Jerry Morrison.

**REQUEST NO. 11:**
Admit that **YOU** sold the **1909 Winchester** to Mr. Jerry Morrison in November 2013.

**REQUEST NO. 12:**
Admit that **YOU** gave possession of the **1909 Winchester** to Mr. Jerry Morrison in November 2013.
…

**REQUEST NO. 16:**
Admit that **YOU** forcibly retook possession of the **1909 Winchester** from Mr. Jerry Morrison on June 3, 2015.
…

**REQUEST NO. 19:**
Admit that the report of theft of the **1909 Winchester** and **1913 Harley Davidson** from **YOUR** home located at 36 S. Daubenberger Road, Turlock, California on September 25, 2015 **YOU** made to the Stanislaus County Sheriff's Department was false.

**REQUEST NO. 20:**
Admit that on October 26, 2015 in a recorded statement to **HAGERTY YOU** stated that **YOU** paid $500,000 in cash for the **1909 Winchester**.
…

**REQUEST NO 22:**
Admit that during **YOUR** examination under oath on December 3, 2015, **YOU** testified that **YOU** paid $500,000 in cash for the **1909 Winchester**.

**REQUEST NO. 23:**
Admit that **YOU** did not pay $500,000 for the **1909 Winchester**.
…

**REQUEST NO. 25:**
Admit that at **YOUR** examination under oath on February 1, 2016, **YOU** testified that the purchase price of the **1909 Winchester** was $5,000.

(Doc. No. 59-5, Exhibit E to Declaration of Alicia M. Gurries.) Mr. Gibson's responses to the Admissions were due by May 18, 2017. UMF 11. On June 7, 2017, Essentia and Hagerty agreed to provide an extension until June 21, 2017 for Mr. Gibson to provide responses without objections to the Admissions. UMF 24. Mr. Gibson failed to serve any responses to the

8

Admissions by June 21, 2017, or at any point thereafter.  UMF 25.

Mr. Gibson's failure to respond to the requests for admissions within a timely manner means that the requests are deemed admitted by operation of law.  Fed. R. Civ. P. 36(a). ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). A party who is deemed to have admitted matters for failure to timely respond is bound by the admissions unless he receives relief from the court under Rule 36(b).  Mr. Gibson has not sought relief from the Court and he has not filed a response to the requests for admissions or the motion for summary judgment.  Accordingly, Hagerty and Essentia's unanswered requests are deemed admitted.

**B.    The Policy is Void *Ab Initio***

In their first counterclaim, Hagerty and Essentia contend that the Policy is void *ab initio* for misrepresentations and concealments made in connection with Mr. Gibson's application for insurance pursuant to California Insurance Code sections 330 and 332.

"The rule in insurance cases is that a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance policy ab initio." *W. Coast Life Ins. Co. v. Ward*, 132 Cal.App.4th 181, 186-87, 33 Cal.Rptr.3d 319 (2005) (citing *O'Riordan v. Fed. Kemper Life Assurance*, 36 Cal.4th 281, 286-87, 30 Cal.Rptr.3d 507, 114 P.3d 753 (2005)). This rule has been codified in the California Insurance Code. *See* Cal. Ins. Code § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); *see also Imperial Casualty & Indemnity Co. v. Sogomonion*, 198 Cal.App.3d 169, 182, 243 Cal. Rptr. 639 (1988) ("As we have concluded that defendants made material false statements in their application, Imperial has a statutory right to rescind the policy. (Ins.Code, §§ 331, 359; Civ.Code, § 1692.)"). "[A] rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable." *Imperial Casualty*, 198 Cal.App.3d at 182.

"Materiality is determined solely by the probable and reasonable effect which truthful answers would have had on the insurer." *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904,

1  916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973); *see also* Cal. Ins. Code § 334 ("Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."). Section 332 of the Insurance Code states clearly the requirement of materiality: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract . . . ." The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish the materiality of that information as a matter of law. *Ward*, 132 Cal.App.4th at 187. Summary judgment may be granted for the insurer where the only reasonable inference to be drawn from the evidence is that the misrepresentations and omissions of the insured were material to the decision to provide insurance coverage. *Id.* (quotation and citation omitted).

Here, the undisputed evidence demonstrates that Mr. Gibson made misrepresentations and omissions on the insurance application regarding the value, origin and location of the 1909 Winchester, and that those misrepresentations and omissions were material to Hagerty and Essentia's decision to the issue the policy. At the time Mr. Gibson filled out the application on May 14, 2015, he knew that the represented value of the 1909 Winchester was <u>not</u> $500,000. At a minimum, the undisputed facts demonstrate that Mr. Gibson did not purchase the 1909 Winchester for $500,000 because he represented to the California Department of Motor Vehicles that he purchased it for $600, and he also provided conflicting testimony to Essentia and Hagerty that he purchased it for $5000. UMF 15, 23. Critically, based on the deemed admissions, Mr. Gibson knew at the time of his application that he did not purchase the 1909 Winchester for $500,000 and that he instead built it himself. UMF 12, 14. Additionally, at the time Mr. Gibson filled out the application on May 14, 2015, he knew his representation regarding storage and location of the 1909 Winchester at his residence was false. He was not in possession of the 1909 Winchester at that time. Instead, Mr. Gibson had sold the 1909 Winchester to Jerry Morrison in September 2013, and Mr. Morrison was in possession of the 1909 Winchester through June 3, 2015. UMF 17, 18.

It is reasonable to infer from the undisputed evidence that Hagerty and Essentia relied on Mr. Gibson's misrepresentations and omissions in the Application as to the value, origin and possession of the 1909 Winchester in issuing the Policy. Had Mr. Gibson accurately represented the value, origin and possession of the 1909 Winchester, no reasonable jury could conclude that Hagerty and Essentia would have issued him the Policy for the 1909 Winchester or for its represented value of $500,000. Indeed, no reasonable jury could conclude that Hagerty and Essentia would issue any insurance coverage to Mr. Gibson for motorcycle that he did not even own or possess. The Court therefore finds that the policy is void *ab initio* based on Mr. Gibson's misrepresentations and omissions in the Application, and Hagerty and Essentia are entitled to summary judgment on their first counterclaim for declaratory relief.

Similarly, Hagerty and Essentia are entitled to summary judgment on their second counterclaim for declaratory relief that the policy is void *ab initio* for lack of insurable interest pursuant to California Insurance Code sections 280 and 287. An insurance policy is void *ab initio* where the insured lacks an insurable interest. Cal. Ins. Code §§ 280 ("If the insured has no insurable interest, the contract is void."); 287; *Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997) (holding that an insurance policy is void ab initio under California law where the insured lacks an insurable interest). As discussed above, the undisputed facts demonstrate that Mr. Gibson did not have an insurable interest in the 1909 Winchester when he applied for the Policy on May 14, 2015, and when he obtained Policy coverage effective May 15, 2015. Rather, Mr. Gibson had sold the 1909 Winchester to Mr. Morrison in September 2013, and it was in Mr. Morrison's possession through June 3, 2015. UMF 17, 18. The Court therefore finds that the policy is void *ab initio* based on the lack of an insurable interest, and Hagerty and Essentia are entitled to summary judgment on the second counterclaim for declaratory relief.

Alternatively, Hagerty and Essentia are entitled to summary judgment on their third counterclaim for declaratory relief that the Policy is void based on misrepresentations in the presentation of the Claim. The Policy here expressly provides that "All coverage afforded will be void if you intentionally conceal or misrepresent any material fact relating to this insurance before or after a loss." UMF 3 (Doc. No. 1-7, Ex. A to Counter Complaint at 4.) Furthermore,

California law provides that an insurer may deny a claim or void a policy if an insured knowingly, intentionally, and with the intent to defraud misrepresents or conceals a material fact during the presentation of the insurance claim. *Cummings v. Fire Ins. Exch.*, 202 Cal.App.3d 1407, 1414-17, 249 Cal.Rptr. 568 (1988) (affirming summary judgment for insurer because insured made material misrepresentations during presentation of claim). "[M]ateriality is determined by its prospective reasonable relevance to the insurer's inquiry." *Id.* at 1417. Thus, a misrepresentation is material if it "concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented." *Id.* The "intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity." *Id.* at 1418.

By giving a false account of the theft of the 1909 Winchester and 1913 Harley-Davidson, Mr. Gibson breached the Policy's fraud and concealment provision. UMF 19. Furthermore, as noted above, Mr. Gibson made material misrepresentations regarding the value and origins of the 1909 Winchester that entitled Hagerty and Essentia to deny the claim, and Hagerty and Essentia are entitled to summary judgment on their third counterclaim for declaratory relief.

In light of the Court's determination that the Policy is void *ab initio* on account of the material misrepresentations made by Mr. Gibson in the insurance application and the lack of insurable interest, and the alternative determination that the Policy was void, the remaining counterclaims for declaratory relief regarding the duty to indemnify are unnecessary and shall be denied as moot.

**V.     Conclusion and Order**

For the reasons stated, Hagerty and Essentia's motion for summary judgment (Doc. Nos. 59 and 82) is GRANTED IN PART and DENIED IN PART as follows:

1.     Hagerty and Essentia's motion for summary judgment on Mr. Gibson's claims for breach of contract and breach of the implied covenant of good faith and fair dealing is DENIED as moot. Judgment already has been entered in favor of Hagerty and Essentia on these claims. (Doc. No. 83.); and

2.     There is no coverage under the Essentia policy for Mr. Gibson's claim because of

Mr. Gibson's misrepresentations regarding the authenticity of the property allegedly "stolen," Mr. Gibson's ownership of the property and the claimed value of the allegedly "stolen" property. Therefore, Hagerty and Essentia's motion for summary judgment on their first and second counterclaims for declaratory relief that the policy is void *ab initio* for misrepresentation and concealments made in connection with the application for insurance and the lack of insurable interest is GRANTED. Alternatively, Hagerty and Essentia's motion for summary judgment on their third claim for declaratory relief that the policy is void based on misrepresentations in the presentation of the claim is GRANTED; and

      3.    Hagerty and Essentia's remaining counterclaims for declaratory relief regarding the duty to indemnify are DENIED as moot;

      4.    Based on the foregoing, the Clerk of the Court is directed to enter judgment in favor of Hagerty and Essentia and against Ray Gibson and Judy Slack consistent with this order on Hagerty and Essentia's counterclaims;

      5.    This concludes the action in its entirety.

IT IS SO ORDERED.

Dated: **April 22, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE